## DONGES v. AMERICAN AUTOMOBILE FIRE INSURANCE COMPANY.

Common Pleas Court, Greene County.

No. 25135. Decided September 18, 1950.

**OPINION**

By JOHNSON, J.

This is an action to recover on an insurance policy for an alleged theft of an automobile, and came on for hearing upon the pleadings and the evidence before the court, a jury having been waived.

The evidence showed that John Rice was at the time hereinafter mentioned an employee of the plaintiff, Ralph H. Donges, as a houseman and general all around handy man. In April of 1947, Mr. Donges and his wife decided to go on a trip South. They had three small children and Mr. Donges made arrangements with his sister, Mrs. Collins, who lived in Dayton, to come to Xenia and look after the house and the children in their absence. Mr. Rice drove the car on many occasions for Mr. Donges, and he was instructed that during their absence he was to drive the car for Mrs. Collins at such times and to such places as she directed him. On April 24, she directed him to take her to Dayton. When she arrived in Dayton she told him to take the automobile back to Xenia and put it in the garage and instructed him as to certain work that he was to do that day. Instead of coming back to the Donges home with the automobile, he came back to Xenia and picked up a young lady by the name of Viola Blair and another couple and drove them to Springfield, Ohio, where they stayed for several hours. They then returned to Xenia and after the other couple left Mr. Rice took a ride out in the country with Viola Blair. While returning in the direction of Xenia on the Hook Road they turned over and the car was wrecked.

The part of the policy of insurance held by Mr. Donges which has application in this case reads as follows:

Coverage D-Comprehensive Loss of or Damage to the Automobile, except by Collision. To pay for any loss of or damage to the automobile hereinafter called loss, except loss caused by collision of the automobile with another object or by upset of the automobile or by collision of the automobile with a

vehicle to which it is attached. Breakage of glass and loss caused by missiles, falling objects, fire, theft, explosion, earthquake, windstorm, hail, water, flood, vandalism, riot, or civil commotion shall not be deemed loss caused by collision or upset.

The sole question outside of the amount of damages in this case is whether or not the using of the car by Mr. Rice under the circumstances as above set forth was a theft within the meaning of the insurance policy. In the case of **Toms v. Hartford Insurance Company, 146 Oh St., 39, 31 O. O. 538,** the syllabus of the court is as follows:

1. A contract of insurance prepared and phrased by the insurer is to be construed liberally in favor of the insured and strictly against the insurer, where the meaning of the language used is doubtful, uncertain or ambiguous.

2. Where the term "theft" is employed but not defined in an automobile insurance contract, it is to be given the usual meaning and understanding accorded it by persons in the ordinary walks of life.

3. In an insurance contract insuring against the "theft" of an automobile, the term "theft" comprehends the wilful taking or appropriation of one person's automobile by another wrongfully, without justification and with the design to hold or make use of the vehicle in violation of the rights of the owner, and recovery by the insured for loss due to "theft" may be had where a taking or appropriation of the insured automobile in the manner and for the purpose described is shown.

In the case of Block, et al v. Standard Insurance Company of New York, decided by the Court of Appeals of New York, and found in 54 Northeastern, Second Series, at page 821, the Court of Appeals reversed the findings of the Supreme Court and held the insurance company liable. In that case the plaintiff owner and her husband were driven by their chauffeur to Asbury Park, N. J. They were to stay overnight at a hotel there. At the end of the day, the chauffeur was told that the automobile would not be needed again that evening and to put it in a garage. The chauffeur then said that the room which he had obtained was some two miles from the hotel and asked for permission to drive the automobile there, park it overnight in a parking lot which was in front of the house in which he had his room and that he would avail himself of the opportunity to wash the automobile in the lot. He was then given money for his room, meals, parking lot rental and for a brush and soap to wash the car. The chauffeur was told not to go joy-riding and promised that he would not.

At about 9 o'clock on the following morning the plaintiffs were notified that there had been an accident. The chauffeur was found in a police station in Middletown and the automobile was found in a gully about twenty miles, toward New York City, from Asbury Park.

In that policy loss or damage by collision is excepted, except plaintiffs may recover if the cause of the loss was the result of a larceny. The insurance company claimed that it was not a larceny. The court cited the penal law of New York, which provides as follows:

Any person who, under circumstances not constituting larceny as defined by any other section of this article, shall, without the consent of the owner take, use or operate or cause to be taken, used or operated, an airplane or other aircraft or an automobile or other motor vehicle, for his own profit, use or purpose, steals the same, is guilty of larceny and shall be punishable accordingly.

While the Ohio statute in reference to the same matter does not use the word larceny, it means the same thing. **Sec. 12619 GC** provides that:

Whoever steals any motor vehicle or whoever purposely takes, drives or operates any motor vehicle without the consent of the owner thereof, etc., shall be punished as provided in the section of the statute.

So that under the statute of Ohio, the unlawful taking without the owner's consent and using it for the purpose of the taker constitutes the same thing as a theft.

In the New York case just above cited, the Court of Appeals held the insurance company under the evidence in that case liable. In the Toms v. Hartford Insurance Company case, the court says:

We think it may be accurately said that to "the man on the street" the word "theft" is of broader scope than "larceny" and comprehends essentially the wilful taking or appropriation of one person's property by another wrongfully and without justification and with the design to hold or make use of such property in violation of the rights of the owner. In our opinion, where the word "theft" is used in an insurance policy, without definition, it should be interpreted as liberally as possible to protect the insured.

In the opinion of this court, Mr. Rice had only a limited use of Mr. Donges' automobile. The only authority he had to use it on the day in question was to take Mr. Donges' sister to Dayton, bring it back to Xenia and put it in the Donges garage. When he returned to Xenia he didn't put it in the Donges garage but went on a joy-ride. The minute he

started on this ride he was operating the motor vehicle without the consent of the owner thereof and was appropriating it wrongfully and making use of such property in violation of the rights of the owner. Therefore, in the opinion of this court, it was a theft within the meaning of the policy and the insurance company is liable under the policy.

The only evidence on the amount of damages is that of Mr. Lang, who testified that he had been in the automobile business since 1926; that he was personally familiar with the value of new and used cars having dealt in them all that time; that he had seen the Donges car on numerous occasions before the theft, and that in his opinion before that time it was reasonably worth from fourteen to fifteen hundred dollars; that he saw the car afterwards and that in his opinion it was then only worth five hundred dollars before being repaired. This evidence is undisputed. The defendant put on no witnesses to deny the testimony of Mr. Lang. In view of the fact, however, that he said that it was worth before the theft from fourteen to fifteen hundred dollars, the court, it would seem, would be bound by the lower figure, and the difference between what it was worth before the theft of fourteen hundred dollars and what is was worth afterwards of five hundred dollars would make the damages nine hundred dollars for which a finding is made by the court in favor of the plaintiff and against the defendant.